```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                     :
FEDERAL HOUSING FINANCE AGENCY, etc., :
                  Plaintiff,         :
             -v-                     :    11 Civ. 6190 (DLC)
                                     :
BARCLAYS BANK PLC, et al.,           :    OPINION & ORDER
                  Defendants.        :
                                     :
-------------------------------------X
```

APPEARANCES:

For the Plaintiff:

Philippe Z. Selendy
Kathleen M. Sullivan
Christine H. Chung
Jordan A. Goldstein
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601


For Defendants:

David H. Braff
Brian T. Frawley
Jeffrey T. Scott
Joshua Fritsch
Sullivan & Cromwell
125 Broad Street
New York, New York 10004


DENISE COTE, District Judge:

   This is one of sixteen actions currently before this Court in which the Federal Housing Finance Agency ("FHFA" or "the Agency"), as conservator for Fannie Mae and Freddie Mac (together, the "Government Sponsored Enterprises" or "GSEs"),

alleges misconduct on the part of the nation's largest financial institutions in connection with the offer and sale of certain mortgage-backed securities purchased by the GSEs in the period between 2005 and 2007.[1]  As amended, the complaints in each of the FHFA actions assert that the Offering Documents used to market and sell Residential Mortgage-Backed Securities ("RMBS") to the GSEs during the relevant period contained material misstatements or omissions with respect to the owner-occupancy status, loan-to-value ("LTV") ratio, and underwriting standards that characterized the underlying mortgages.  On the basis of these allegations, the complaints assert claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, l(a)(2), o; the Virginia Securities Act, VA Code Ann.

---

[1] The sixteen cases are: FHFA v. UBS Americas, Inc., et al., 11 Civ. 5201 (DLC); FHFA v. JPMorgan Chase & Co., et al., 11 Civ. 6188 (DLC); FHFA v. HSBC North America Holdings, Inc., et al., 11 Civ. 6189 (DLC); FHFA v. Barclays Bank PLC, et al., 11 Civ 6190 (DLC); FHFA v. Deutsche Bank AG, et al., 11 Civ. 6192 (DLC); FHFA v. First Horizon National Corp., et al., 11 Civ 6193 (DLC); FHFA v. Bank of America Corp., et al., 11 Civ. 6195 (DLC); FHFA v. Citigroup Inc., et al., 11 Civ. 6196 (DLC); FHFA v. Goldman, Sachs & Co., et al., 11 Civ. 6198 (DLC); FHFA v. Credit Suisse Holdings (USA), Inc., et al., 11 Civ. 6200 (DLC); FHFA v. Nomura Holding America, Inc., et al., 11 Civ. 6201 (DLC); FHFA v. Merrill Lynch & Co., Inc., et al., 11 Civ. 6202 (DLC); FHFA v. SG Americas, Inc., et al., 11 Civ. 6203 (DLC); FHFA v. Morgan Stanley, et al., 11 Civ. 6739 (DLC); FHFA v. Ally Financial Inc., et al., 11 Civ. 7010 (DLC); FHFA v. General Electric Co., et al, 11 Civ. 7048 (DLC).  The FHFA has also brought two similar actions, which are pending in federal courts in California and Connecticut.  See FHFA v. Countrywide Financial Corp., et al., No. 12 Civ. 1059 (MRP) (C.D. Cal.); FHFA v. Royal Bank of Scotland, No. 11 Civ. 1383 (AWT) (D. Conn).

§ 13.1-522(A)(ii), (C); and the District of Columbia Securities Act, D.C. Code § 31-5606.05(a)(1)(B), (c).  In six of the cases, though not this one, the Agency has also asserted claims of fraud and aiding and abetting fraud against the certain entity defendants under the common law of New York State (the "Fraud Claim Cases").[2]

The Court has already issued several Opinions addressing motions to dismiss in other cases brought by the FHFA.[3]  Familiarity with those Opinions is assumed; all capitalized terms have the meanings previously assigned to them.

Following this Court's decision of the motion to dismiss in FHFA v. UBS, discovery began in all of the coordinated cases.  Briefing of defendants' motions to dismiss in the remaining fifteen cases has occurred in two phases, with the motions in

---

[2] As noted in previous Opinions, the plaintiff also pleads defendants' statements regarding the credit ratings of the Certificates as a separate category of misstatement under the Securities Act.  These claims are largely derivative of the three core representations described above.

[3] Federal Housing Finance Agency v. UBS Americas, Inc. et al., 858 F. Supp. 2d 306 (S.D.N.Y. 2012) ("UBS I"); Federal Housing Finance Agency v. UBS Americas, Inc., et al., No. 11 Civ. 5201 (DLC), 2012 WL 2400263 (S.D.N.Y. June 26, 2012) ("UBS II"); Federal Housing Finance Agency v. JPMorgan Chase & Co., et al., No. 11 Civ. 7188 (DLC), 2012 WL 5395646 (S.D.N.Y. Nov. 5, 2012) ("Chase"); FHFA v. Merrill Lynch & Co., et al., No. 11 Civ. 6202 (DLC), 2012 WL 5351188 (S.D.N.Y. Nov. 8, 2012) ("Merrill"); FHFA v. Deutsche Bank, et al., No. 11 Civ. 6192 (DLC), 2012 WL 5471864 (S.D.N.Y. Nov. 12, 2012) ("Deutsche Bank"); FHFA v. Goldman Sachs & Co, et al., No. 11 Civ. 6198, 2012 WL 5494923 (S.D.N.Y. Nov. 12, 2012) ("Goldman").

Fraud Claim Cases becoming fully submitted on October 11, 2012. The motions in this case and the remaining eight cases were fully submitted November 9, 2012.  Depositions are to begin in all cases in January 2013, and all fact and expert discovery in this matter, 11 Civ. 6190 (DLC), must be concluded by December 6, 2013.  Trial in this matter is scheduled to begin in January 2015 as part of the fourth tranche of trials in these coordinated actions.

This case concerns RMBS Certificates allegedly purchased by the GSEs between September 2005 and October 2007.  Each of the GSE Certificates pertains to one of eight securitizations offered for sale pursuant to one of seven shelf-registration statements.  The lead defendant is Barclays Bank PLC ("Barclays").  Several corporate affiliates of Barclays and three associated individuals are also defendants.  Barclays affiliates served as lead or co-lead underwriter for each of the eight securitizations at issue and as depositor for two of them. Each individual defendant signed the shelf registration statement for the Barclays-deposited security.

The defendants' motion to dismiss presses a number of arguments that are also pressed by other defendants in these coordinated actions, many of which have been addressed by this Court's previous Opinions.  The Court hereby adopts by reference the reasoning and, to the extent they are relevant here, the

4

rulings of those prior Opinions. All capitalized terms have the meanings previously assigned to them.

The defendants' motion does, however, present one argument that has not been addressed in this Court's prior Opinions. The defendants argue that SABR (a Barclays-owned depositor) and the individual defendants cannot be held liable under the Virginia Securities Act for misstatements related to securities that they did not themselves sell to the plaintiff. The Amended Complaint asserts primary violations of the Virginia Securities Act by SABR and Virginia-law control-person claims against the individual defendants based on their control over SABR.

As a general matter, "Virginia courts will look to interpretations of the federal securities laws when called upon to construe the Virginia Securities Act." Dunn v. Borta, 369 F.3d 421, 428 n.17 (4th Cir. 2004). The language in the Virginia statute that defines the scope of control-person liability does not differ materially from its federal equivalent. Compare VA Code Ann. § 13.1-522(C), with 15 U.S.C. §§ 77o. Both provisions impose liability on a person who "controls" a primary violator. Defendants do not contend that the statutes differ in this respect. Rather, they argue that the plaintiff's claims against SABR cannot be sustained under the Virginia Act's primary liability provisions and that, for

that reason, the Virginia-law control-person claims against the individual defendants fail as well.

With respect to primary liability, the Supreme Court has held in the federal context that a plaintiff may assert claims against a party under Section 12 of the Securities Act, even in the absence of contractual privity, so long as it is shown that the defendant "successfully solicit[ed] the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner."  Pinter v. Dahl, 486 U.S. 622, 647 (1988).

The adoption of this rule, which has come to be known as the "statutory seller" standard, see UBS I, 858 F. Supp. 2d at 333, was driven in large part by the precise wording of Section 12, which provides, as relevant here:

> Any person who . . . offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact . . . shall be liable . . . to the person purchasing such security from him . . . .

15 U.S.C. § 77*l*(a)(2).

The Court noted in particular that the Securities Act defines the terms "offer to sell," "offer for sale," or "offer" to include "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value."  15 U.S.C. § 77b(a)(3).  From this, it

concluded that "[t]he inclusion of the phrase 'solicitation of an offer to buy' within the definition of 'offer' brings an individual who engages in solicitation, an activity not inherently confined to the actual owner, within the scope of § 12."  <u>Pinter</u>, 486 U.S. at 643.

Defendants point out, however, that unlike the federal Securities Act, the Virginia Securities Act omits the term "offer" from its otherwise identical private liability provision:

> Any person who . . . sells a security by means of an untrue statement of a material fact . . . shall be liable to the person purchasing such security from him . . . .

VA Code Ann. § 13.1-522(A)(ii).

Like the federal statute, the Virginia Securities Act defines the term "sell" to include "every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value."  VA Code Ann. § 13.1-522(A)(ii).  The word "offer" is also defined in terms that are identical to the federal definition.  But, despite making it unlawful to make use of untrue statements of material fact "in the <u>offer</u> or sale of any securities," VA Code Ann. § 13.1-502(2) (emphasis supplied), the Virginia legislature conspicuously omitted the term "offer" from the Virginia Securities Act's private liability provision.

7

It must be assumed that this omission was intentional. See United States v. Nordic Vill., Inc., 503 U.S. 30, 36 (1992) (noting the "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect"). Indeed, the Pinter Court observed that in its original form the federal Securities Act omitted the term "offer or" from Section 12's liability provisions but defined "sell" broadly to include not only transfer of title but also solicitation. Pinter, 486 U.S. at 645. When the statute was amended in 1954, Congress split "the original definition of 'sell' . . . into separate definitions of 'sell' and 'offer' in order to accommodate changes" in another section, but added the words "offer or" to Section 12 in order to "preserve existing law, including the liability provisions of the Act." Id. The Court remarked that "had Congress intended liability to be restricted to those who pass title, it could have effectuated its intent by not adding the phrase 'offers or' when it split the definition of 'sell.'" Id. at 646.

That is precisely what the Virginia legislature did when, in 1956, it adopted a securities law that paired the language of Section 12(a)(2) that was in force before 1954 with the federal law's post-amendment definitions of "offer" and "sell." See 1956 Va. Acts 589, 600. Since the original promulgation of the statute, the Supreme Court has called attention to this issue

8

with its decision in Pinter and the Virginia statute's omission of the term "offer" has been remarked upon, albeit in dictum, by the U.S. Court of Appeals for the Fourth Circuit and has provided the basis for a holding of the state's trial court. See Dunn, 369 F.3d at 428 n.17 ("Section 12(2) differs from section 13.1-522(A)," inter alia, "in that the former imposes liability for offers as well as sales . . . ."); Atocha Ltd. P'ship v. Witness Tree, LLC, Nos. 180921 et al., 2004 WL 1665009, at *5 (Va. Cir. Ct. July 16, 2004) ("It is apparent, therefore, that the Virginia legislature, having distinguished between sales and offers, chose to impose § 13.1-522 liability on sellers alone.")  Yet despite amending the definitions section of the Virginia Securities Act numerous times, most recently in 2001, and the private liability section in 1987 and 1997, the Virginia legislature has never seen fit to bring the scope of private liability under the state's securities laws into synch with liability under Section 12(a)(2).

The reason for this inaction is not difficult to fathom. Virginia has purposefully sought to ensure that the scope of private liability under its statutes is more limited than that under federal law by, for example, specifying a statute of repose that is shorter than the one that pertains under the federal Securities Act.  See VA Code Ann. § 13.1-522(D). Requiring contractual privity between plaintiff and defendant in

9

an action under § 13.1-522 is consistent with that purpose. Consequently parties, including depositors, who do not pass title to a plaintiff are not liable under § 13.1-522(A)(ii) of the Virginia Securities Act.[4]  The claims under this provision against SABR are therefore dismissed, as are the derivative control-person claims against the individual defendants.[5]

---

[4] Relying on SEC Rule 159A, this Court previously concluded that an issuer is a statutory seller for the purposes of Section 12(a)(2) of the federal Securities Act.  See UBS I, 858 F. Supp. 2d at 333 (citing 17 C.F.R. § 230.159A).  The SEC rule, however, rests on the Commission's conclusion that
> an issuer offering or selling its securities in a registered offering pursuant to a registration statement containing a prospectus that it has prepared and filed, or by means of other communications that are offers made by or on behalf of or used or referred to by the issuer can be viewed as soliciting purchases of the issuer's registered securities.

Securities Offering Reform, SEC Release No. 75, 2005 WL 1692642, at *78 (July 19, 2005).  As already explained, the Virginia Securities Act does not include solicitation within its definition of "sell."

[5] Because this holding disposes of the plaintiff's Virginia Securities Act claims against the individual defendants, it is not necessary to consider the defendants' argument that application of that statute to them would violate the federal Due Process Clause.

CONCLUSION

The defendants' August 17 motion to dismiss is granted with respect to the plaintiff's Virginia Securities Act claims against SABR and the individual defendants and denied in all other respects.

SO ORDERED:

Dated:   New York, New York
        November 19, 2012

```
                    _____
                           DENISE COTE
                    United States District Judge
```